UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ALBERT L. WOODS,

                  Petitioner,             Case No. 2:17-cv-26

v.                                      Honorable Gordon J. Quist

JEFFREY WOODS,

                  Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Albert L. Woods is incarcerated with the Michigan Department of Corrections at the Kinross Correctional Facility (KCF) in Kincheloe, Michigan. Following a six-day jury trial in the Kent County Circuit Court, Petitioner was convicted of one count of armed robbery and one count of conspiracy to commit armed robbery, Mich. Comp. Laws § 750.529. On July 2, 2012, the court sentenced Petitioner to prison terms of 25 to 50 years for each conviction.

Petitioner's timely filed habeas corpus petition raises five grounds for relief, paraphrased as follows:

I.      Was Petitioner's arrest illegal, where an arrest warrant was not obtained for two more days, accordingly any statements made or evidence obtained as a consequence of the arrest must be suppressed. Counsel was ineffective for failing to file a motion to suppress.

II.     Were Petitioner's Fourth Amendment rights violated when, without a warrant, the police placed a GPS tracking device on Petitioner's vehicle without a warrant. Counsel was ineffective for failing to move to suppress, any and all results of this warrantless search, and a remand should be held for an evidentiary hearing.

III.    Petitioner was denied a fair trial when the government violated Petitioner's due process rights when upon request the government did not produce discovery.

IV.    Petitioner was deprived of due process when the trial judge imposed a retaliatory sentence for failing to accept a plea bargain, and instead choosing a trial.

V.    Petitioner's counsel was ineffective and the trial court abused its discretion in denying a motion to hold an evidentiary hearing.

VI.    Petitioner's Sixth Amendment rights were violated when the prosecutor was allowed to present reports through a witness other than the individual who prepared the reports.

(Pet., ECF No. 1, PageID.16-26.)  Respondent has filed an answer to the petition (ECF No. 13) stating that the grounds should be denied because they are non-cognizable, procedurally defaulted, and meritless.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are procedurally defaulted or meritless.  Accordingly, I recommend that the petition be denied. Moreover, I recommend that Petitioner's motion to produce documents (ECF No. 15), Petitioner motion to stay (ECF No. 18), and Petitioner's motion to amend (ECF No. 19) be denied.

## I.    <u>Factual allegations</u>

Petitioner's habeas issues focus on deficiencies before the trial, during the trial outside the presence of the jury, and after the verdict.  Petitioner argues that much of the evidence admitted at his trial should have been suppressed or excluded; but he does not argue that the evidence admitted was insufficient.  Because Petitioner does not question the sufficiency of the evidence in this Court, and because he does not contest the factual summary offered by the Michigan Court of Appeals, the Court will rely on that summary:

> In the early morning hours of September 1, 2011, two masked men robbed a McDonald's restaurant on Alpine Road in Grand Rapids at gun point.  The robbers entered the dining room through a door that mistakenly had been left unlocked. After ordering the restaurant's three employees to lie on the ground, the masked

men forced the store manager to give them the contents of the safe.  The robbers absconded with $400 worth of paper gift certificates and $3,233.73 in cash.  The victims were only able to describe their assailants as African–American males who wore dark or black clothes.  The victims agreed that one of the men carried a revolver.  Surveillance footage also revealed that the robbers wore white cloth gloves.

As the robbers fled the scene, surveillance cameras captured their images and showed the men entering an older black Camaro.  The men were witnessed by two employees of a nearby Wal-Mart.  And a man, who had been at the drive-through window during the robbery, testified that he saw a dull black Camaro drive away at a high rate of speed.

Later that morning, a Kent County Sheriff's deputy located a dull black, older Camaro parked in a nearby apartment complex, York Creek.  Sheriff's deputies conducted visual surveillance of the vehicle from 8:00 a.m. until 4:00 p.m.  The deputies executed a search warrant for the vehicle's interior and found several white gloves.  Inside one glove, investigating deputies found DNA evidence, which later testing matched to defendant.  Without first securing a warrant, the deputies placed a magnetic GPS tracking system under the vehicle's rear bumper.  The deputies then discontinued visual surveillance.

Within ten minutes of leaving the scene, the deputies received a text message from the GPS system indicating that the Camaro was in motion.  Several units followed the vehicle until its driver committed a traffic infraction.  A fully marked sheriff's vehicle effectuated a traffic stop and the detectives approached.  Defendant was the lone occupant of the car.  He indicated that he had purchased the vehicle only two hours earlier but could not remember where he made the purchase.  And a certificate found in defendant's wallet showed that he had secured insurance for the vehicle four days earlier.

One deputy directed defendant to exit the vehicle and conducted a pat-down search, finding several large rolls of currency in defendant's pocket.  The funds were of various denominations (193 singles, 53 fives, 13 tens, 33 twenties, and 2 fifties), totaling $1,348.  Defendant claimed that the funds were the proceeds of a check he had just cashed.  Yet, defendant could not tell the officers the amount of the check or how much money he had on his person.  The deputies seized the currency, as well as defendant's wallet and cell phone, and took defendant into custody.

The officers secured a warrant to search the contents of defendant's cell phone.  The deputies found a video of defendant and another man, codefendant Cedric Welch, Jr., pretending to swim in a pile of money.  They also found pictures of defendant and Welch holding a large amount of currency near their faces.  The video had been e-mailed to defendant's Google account from an account owned by Welch.  The pictures and the video were all taken or transferred on the morning of September 1, following the time of the robbery.

After taking defendant into custody, the deputies executed a search warrant at his apartment. They found 18 booklets of McDonald's paper gift certificates. They also found dark clothing lying on the ground outside of the master bedroom closet. There were spores on the pants matching plant life found along the trail between the Camaro's parking spot and the York Creek apartment of Welch's girlfriend. The deputies matched the still photographs of defendant and Welch holding currency to this location.

The deputies secured a warrant to search an apartment in York Creek belonging to Welch's girlfriend. The video of the men swimming in money was matched to this location. The officers then secured a search warrant for the home where Welch resided with his parents. In Welch's bedroom, the deputies found a plastic case for a revolver-style Daisy air gun. There was an alternate second barrel inside the case, but the revolver was never found. The deputies also never recovered the remainder of the currency. Of note, investigation of defendant's and Welch's cell phone records revealed that they were in the area of the Alpine Road McDonald's near the time of the robbery.

Welch apparently was not arrested immediately. On November 2, 2012, defendant used a recorded jail telephone to contact Welch. The conversation was very cryptic and defendant immediately instructed Welch not to use any names. Defendant instructed Welch to send a text message to defendant's cell phone that would activate a Prey software application he had downloaded onto his phone. This task was never accomplished.

(Mich. Ct. App. Op., ECF No. 14-10, PageID.703.)

The jury deliberated for about a day and a half before returning its verdict finding Petitioner guilty of armed robbery and conspiracy to commit armed robbery. The jury continued its deliberations with regard to Petitioner's co-defendant Welch even after it returned its verdict with respect to Petitioner. The jury could not reach a verdict with regard to Welch.[1]

Petitioner directly appealed his convictions and sentences to the Michigan Court of Appeals (MCOA). In the brief Petitioner filed with the assistance of counsel, he raised seven issues including his habeas issue I (MCOA appeal brief issue I), habeas issue II (MCOA appeal brief issue II), habeas issue IV (MCOA appeal brief issue VI), habeas issue V (MCOA appeal brief

---

[1] *People v. Welch*, No. 313085, 2014 WL 1233945, at *1 n.1 (Mich. Ct. App. Mar. 25, 2014). Welch was convicted of armed robbery and conspiracy to commit armed robbery in his second trial. *Id.*

issue VII), and habeas issue VI (MCOA appeal brief issue VII).  Petitioner also filed a Standard 4

brief[2] raising five additional issues, including habeas issue III (MCOA Std. 4 brief issue III or II[3]).

Thus, Petitioner raised all of the issues he raises in this Court in his direct appeal to the Michigan

Court of Appeals.

By opinion issued December 19, 2013, the court of appeals affirmed the trial court

with respect to all of the issues Petitioner raised, except one.  (Mich. Ct. App. Op., ECF No. 14-

10, PageID.703-720.)  The court agreed with Petitioner that the trial court erred with respect to

scoring a particular offense variable under the Michigan sentencing guidelines.  (*Id.*, PageID.717-

720.)  The court of appeals remanded the case to the trial court for resentencing.

The trial court resentenced Petitioner to 22 to 50 years on each count on January

27, 2014.  (Sentencing II Tr., ECF No. 14-12.)  Petitioner, with the assistance of counsel, directly

appealed his new sentence.  At the same time, Petitioner continued to pursue the direct appeal of

his initial convictions.  Petitioner filed a pro per application for leave to appeal in the Michigan

Supreme Court (MSC).  He raised five issues, including habeas issue I (MSC issue II), habeas

issue II (MSC issue I), habeas issue V (MSC issue V), and habeas issue VI (MSC issue IV).

---

[2] The Michigan Supreme Court's administrative order regarding minimum standards for indigent criminal appellate defense services provides:

**Standard 4**
When a defendant insists that a particular claim or claims be raised on appeal against the advice of counsel, counsel shall inform the defendant of the right to present the claim or claims in propria persona. Defendant's filing shall consist of one brief filed with or without an appropriate accompanying motion. Counsel shall also provide such procedural advice and clerical assistance as may be required to conform the defendant's filing for acceptability to the court. The defendant's filing in propria persona must be received by the Court of Appeals within 84 days after the appellant's brief is filed by the attorney . . . .

Mich. Administrative Order No. 2004-6.

[3] Petitioner filed an initial and then a revised Standard 4 brief.  Each version lists the discovery issue as issue III in the statement of questions presented and Issue II in the argument.  (Pet'r's Std. 4 Br., ECF No. 14-10, PageID.781, 783; Pet'r's Revised Std. 4 Br., ECF No. 14-10, PageID.794, 796.)

Petitioner did not raise his habeas issues III or IV in the Michigan Supreme Court.  The supreme court denied leave by order entered June 24, 2014.  (Mich. Order, ECF No. 14-11, PageID.870.)

The Michigan Court of Appeals denied relief on Petitioner's challenge to his resentencing by opinion issued May 26, 2015.  (Mich. Ct. App. Op., ECF No. 14-15, PageID.1030-1032.)  Petitioner did not further pursue his appeal of the resentencing in the Michigan Supreme Court.  (Affid. of Larry Royster, ECF No. 14-16, PageID.1078.)

Just before the Michigan Court of Appeals issued its resentencing appeal opinion, Petitioner filed a motion for relief from judgment in the trial court raising sixteen new issues.  (Mot. for Relief from J., ECF No. 14-13.)  On May 12, 2015, two weeks before the court of appeals rejected Petitioner's second appeal, the trial court denied Petitioner's motion under all three of the circumstances identified in Michigan Court Rule 6.508(D) that preclude relief:  (1) Petitioner sought relief from a judgment of conviction that was still subject to challenge on appeal; (2) Petitioner sought relief on grounds that had already been decided against him on his initial appeal; and (3) Petitioner raised grounds for relief that could have been raised on appeal, but were not, and he had failed to show cause to excuse the failure and resulting prejudice, or actual innocence.  (Kent Cty. Cir. Ct. Order, ECF No. 14-14, PageID.1028-1029.)

Petitioner sought leave to appeal the circuit court's denial of his motion in the Michigan Court of Appeals.  He reduced the number of issues raised, however, from sixteen to eight.  The court of appeals denied relief by order entered January 8, 2016.  (Mich. Ct. App. Order, ECF No. 14-17, PageID.1079.)  The court of appeals concluded that relief on the issues raised was barred, not by all three circumstances from Rule 6.508(D), but by only one: Petitioner had failed to establish cause for failing to raise the issues previously or prejudice, and his failure was not excused by his actual innocence.  (*Id.*)

Petitioner raised the same eight issues in the Michigan Supreme Court by way of an application for leave to appeal the court of appeals order.  That court denied leave by pro forma order entered November 30, 2016.  (Mich. Order, ECF No. 14-18, PageID.1144.)  The court of appeals' order is the "last reasoned decision" stating why the motion for relief from judgment was denied.  Accordingly, under *Ylst v. Nunnemaker,* 501 U.S. 797, 803-04 (1991), it is the decision this Court will rely upon in determining the reason for the rejection of Petitioner's claims.

Petitioner filed the instant petition a few months later.  After Respondent filed the answer, Petitioner sought several different types of relief from this Court.  First, Petitioner asked the Court to order Respondent to produce the Rule 5 materials.  (Pet'r's Mot., ECF No. 15.)  It appears that Petitioner's receipt of those materials may have been delayed by a prison transfer.  Based on Petitioner's subsequent reply brief (Pet'r's Reply Br., ECF No. 20), it appears he has received the materials he sought.  Second, Petitioner asked the Court for an extension to file his reply brief.  (Pet'r's Mot., ECF No. 15.)  Petitioner timely filed his reply; accordingly, his request for an extension is moot.

Petitioner also asked the Court to stay these proceedings to permit him to return to the trial court to raise, by motion for relief from judgment, the claims that Respondent argues have been procedurally defaulted.  (Pet'r's Mot. to Stay, ECF No. 18, PageID.1221.)  For the reasons set forth in § III, below, Petitioner's return to the trial court to raise claims that are presently unexhausted would be futile.  Petitioner offers no good cause for his failure to raise in the Michigan Supreme Court issues that he was plainly aware of—because they had been raised in the Michigan Court of Appeals.  Under *Rhines v. Weber*, 544 U.S. 269, 278 (2005), absent such a showing of "good cause" for Petitioner's failure to exhaust, Petitioner is not entitled to a stay so that he might return to the trial court.

Finally, Petitioner asked the Court to permit him to amend his petition to drop "unexhausted" claims.  (Pet'r's Mot. to Amend, ECF No. 19.)  Essentially, Petitioner asks the Court to trim his habeas issues from six issues down to two, leaving only issue V regarding ineffective assistance of counsel and issue VI regarding a Confrontation Clause violation. Petitioner's request, however, is based on a faulty premise.  Petitioner offers to forego issues I-IV because he believes they will not be considered because they are unexhausted.  That is not the case.  Issues I and II are plainly exhausted because they have been raised to all levels of the Michigan Court system.  Issues III and IV, have never been presented to the Michigan Supreme Court.  As set forth in § III, below, there is no available means to present them now.  Where no means to exhaust remains, failure to exhaust no longer bars review.  Petitioner's motion to amend, therefore, is properly denied, along with his other motion requests for relief.

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Before the court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts.  28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim.  *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)).  To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court.  *Duncan*, 513 U.S. at 365-66; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 845.  The district court can and must raise the exhaustion issue *sua sponte*, when it clearly appears that habeas claims have not been presented to the state courts.  *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen v. Perini*, 424 F.2d 134, 138-39 (6th Cir. 1970).

Here, Petitioner's Habeas Issues I, II, V, and VI are clearly exhausted.  Petitioner fairly presented the claims to all levels of the state appellate system.  Petitioner's Habeas Issues III and IV, however, have not been fairly presented to each level.

Fair presentation has a substantive component and a procedural component.  With regard to substance, fair presentation is achieved by presenting the asserted claims in a constitutional context through citation to the Constitution, federal decisions using constitutional analysis, or state decisions which employ constitutional analysis in a similar fact pattern.  *Picard*, 404 U.S. at 277-78; *Levine v. Torvik*, 986 F. 2d 1506, 1516 (6th Cir. 1993).  With regard to procedure, "[t]he fair presentation requirement is not satisfied when a claim is presented in a state court in a procedurally inappropriate manner that renders consideration of its merits unlikely." *Black v. Ashley*, No. 95-6184, 1996 WL 266421, at *1-2 (6th Cir. May 17, 1996) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1998)); *see also Long v. Sparkman*, No. 95-5827, 1996 WL 196263, at *2 (6th Cir. April 22, 1996); *Fuller v. McAninch*, No. 95-4312, 1996 WL 469156, at *2 (6th Cir. Aug. 16, 1996).

Petitioner never presented the substance of Habeas Issues III and IV to the Michigan Supreme Court.  They are not part of his application for leave to appeal filed in that court on his initial direct appeal.  (Appl. for Leave to Appeal, ECF No. 14-11, PageID.871-882.)  He never filed an application for leave to appeal in the Michigan Supreme Court on his second direct appeal.  (Aff. of Larry Royster, ECF No. 14-16.)  The issues are also not present in his application for leave to appeal regarding the denial of Petitioner's motion for relief from judgment.  (Second Appl. for Leave to Appeal, ECF No. 14-18, PageID.1145-1190.)  Therefore, Petitioner's habeas issue III and IV have never been fairly presented to the Michigan Supreme Court.  Those issues, therefore, remain unexhausted.

11

Exhaustion is only a problem, however, if there is a state court remedy available for Petitioner to pursue, thus providing the state courts with an opportunity to cure any constitutional infirmities in the state court conviction. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). If no further state remedy is available to the petitioner, the failure to exhaust does not bar review, but the claim is procedurally defaulted and the federal court must determine whether cause and prejudice exists to excuse the failure to present the claim in state court. *Id.*

Petitioner can no longer raise the issues in the Michigan Supreme Court. The time for seeking leave to appeal has long passed. Mich. Ct. R. 7.305(C). And, Petitioner already has filed in the trial court his one allotted motion under Mich. Ct. R. 6.502. He therefore has no available remedy.

Petitioner contends that he still has a remedy in the Michigan courts. He argues that because the appeal of his resentencing was ongoing when he filed his motion for relief from judgment, the trial court never had jurisdiction to decide the motion and, therefore, the motion should not count as his single permitted motion for relief from judgment. Petitioner's argument might have merit if the court of appeals had affirmed the trial court based on the reasoning that his resentencing appeal was ongoing when Petitioner filed the motion. The court of appeals instead denied relief for a different reason—a reason that refutes his argument—because Petitioner had failed to raise his post-judgment motion issues on his initial direct appeal and had failed to establish cause for or prejudice from his failure to do so.

The appellate court's determination that Petitioner could pursue his motion-for-relief-from-judgment issues despite the ongoing appeal undoubtedly follows from the fact that the scope of appellate review following resentencing after remand is limited by the scope of the remand. *People v. Jones*, 231 N.W.2d 649 (1975). The remand was limited to the scoring of

Offense Variables 12 and 13—nothing more.  (Mich. Ct. App. Op., ECF No. 14-10, PageID.720.)

Petitioner's new issues related to the validity of his conviction and other sentencing issues, not the

scoring of Offense Variables 12 and 13.  Therefore, his ongoing appeal did not conflict with his

pursuit of the motion for relief from judgment in the trial court.

At this juncture, the Court must consider whether there is cause and prejudice to

excuse Petitioner's failure to present Habeas Issues III and IV in the Michigan Supreme Court.

*See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Rust*, 17 F.3d at 160.  Petitioner offers no

cause for his failure to fairly present Habeas Issues III and IV in the Michigan Supreme Court.  He

was aware of the issues.  They had been raised in the court of appeals.  Where a petitioner fails to

show cause, the court need not consider whether he has established prejudice.  *See Engle v. Isaac*,

456 U.S. 107, 134 n.43 (1982); *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985).  Petitioner is

not entitled to habeas relief with respect to issues III and IV because of his procedural default.

Petitioner contends that he was seized illegally, without a warrant (Habeas Issue I).

He claims police also violated his Fourth Amendment rights when they placed a GPS tracking

device on his vehicle without a warrant (Habeas Issue II).  Both claims are barred by the doctrine

of *Stone v. Powell*, 428 U.S. 465 (1976); *see also Queen v. Scroggy*, 99 F.3d 1302, 1332 (6th Cir.

1996) (noting that it is well-settled that *Stone v. Powell* bars Fourth Amendment claims).  In *Stone*

*v. Powell*, the Supreme Court held that federal habeas review is not available to a state prisoner

alleging that his conviction rests on evidence obtained through an unconstitutional search or

seizure, as long as the state has given the petitioner a full and fair opportunity to litigate the claim.

*Id.*; *see also Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012).

In order for the rule of *Stone v. Powell* to apply, the state must have provided, in

the abstract, a mechanism by which to raise the Fourth Amendment claim, and the presentation of

13

the claim in the case before the court must not have been frustrated by failure of that mechanism. *See Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985).  If these two inquiries are satisfied, federal habeas review of the Fourth Amendment claim is precluded, even if the federal court deems the state-court determination of the claim to have been in error.  *Id.* at 824; *accord Jennings v. Rees*, 800 F.2d 72 (6th Cir. 1986); *Markham v. Smith*, 10 F. App'x 323, 326 (6th Cir. 2001).

Petitioner cannot satisfy either prong of the *Stone v. Powell* standard.  First, it is beyond dispute that Michigan has a state procedural mechanism that provides a defendant a full opportunity to raise a Fourth Amendment claim before trial.  Even before the United States Supreme Court decided that the federal exclusionary rule applied to state criminal proceedings, Michigan courts applied the exclusionary rule to the fruits of unconstitutional searches and seizures. *See People v. Margelis*, 186 N.W. 488 (Mich. 1922).  After *Mapp v. Ohio*, 367 U.S. 643 (1961), Michigan courts consistently have acknowledged their duty, under both the federal and state constitutions, to suppress evidence seized in violation of the Fourth Amendment.  *See, e.g., People v. David*, 326 N.W.2d 485, 488 (Mich. Ct. App. 1982).  Consequently, Michigan affords criminal defendants a means to raise Fourth Amendment challenges.

To satisfy the remaining prong of *Stone v. Powell*, Petitioner must allege facts showing that the state corrective mechanism has somehow broken down.  *See, e.g., Agee v. White*, 809 F.2d 1487, 1490 (11th Cir. 1987) (habeas review not barred when state appellate court completely ignored Fourth Amendment claim).  The Sixth Circuit pointedly has held that the doctrine of *Stone v. Powell* applies, even if the federal court deems the state-court determination of the Fourth Amendment claim to have been in "egregious error." *Gilbert*, 763 F.2d at 824 (citing *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982)).

14

Petitioner has not alleged any facts indicating that the state's mechanism has broken down.  Indeed, it is clear that the Michigan courts gave Petitioner's claim full and proper consideration.  Counsel did not file a motion to suppress in the trial court.[4]  Petitioner, however, raised the issues to the trial court before the jury panel was brought in.  (Trial Tr. I, ECF No. 14-3, PageID.349-351.)  The trial judge concluded the claims were meritless.  (*Id*., PageID.351.)  The court of appeals addressed Petitioner's Fourth Amendment claims on appeal; but, because no motion to suppress had been filed, the court's review was limited to a determining whether there had been plain error affecting Petitioner's substantial rights.  (Mich. Ct. App. Op., ECF No. 14-10, PageID.705-706.)  The state appellate court concluded both claims were meritless.  (*Id*., PageID.705-709.)  The Michigan Supreme Court then determined that Petitioner's Fourth Amendment issues were not worthy of further review.  (Mich. Order, ECF No. 14-11.)

Even if this Court were to disagree with the determinations of the Michigan courts, that disagreement would be insufficient to demonstrate a break-down in the state court's corrective mechanisms.  *Gilbert*, 763 F.2d at 824.  Accordingly, because Petitioner has failed to demonstrate either prong of *Stone v. Powell*, his claims of illegal search and illegal arrest are barred on habeas review.

Petitioner contends his counsel was ineffective for not moving to suppress evidence obtained by virtue of the warrantless arrest and warrantless placement of the GPS tracking device on the black Camaro.  Petitioner also complains that counsel failed to call Petitioner's alibi witnesses.

---

[4] Petitioner contends his counsel was constitutionally ineffective, in part, because counsel failed to move to suppress the evidence obtained through his warrantless arrest and the warrantless tracking of the black Camaro.  The ineffective assistance claims are addressed in detail below.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing

16

on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

Measured against the *Strickland* standard, Petitioner's ineffective assistance claims do not warrant habeas relief.

The merits of Petitioner's Fourth Amendment challenges become relevant despite *Stone v. Powell* because of Petitioner's ineffective assistance of counsel claims.  In *Kimmelman v. Morrison*, 477 U.S. 365 (1986), the Supreme Court stated: "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that he verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice."  *Id.* at 375.

Even though the trial court never held a hearing regarding Petitioner's counsel's failure to seek to suppress the evidence that followed from warrantless actions, the trial transcript gives some insight into counsel's reasoning.  After Petitioner complained about his counsel's failure to take several actions urged by Petitioner, counsel told the court: "I also researched and investigated whether or not it was a valid stop of his automobile, and I believed in my opinion it was, so I did not file a motion that I thought would be frivolous."  (Trial Tr. I, ECF No. 14-3, PageID.350.)   The trial court then told Petitioner he found Petitioner's Fourth Amendment arguments to be meritless.  (*Id.*, PageID.351.)

The Michigan Court of Appeals agreed with the trial court's conclusion.  The appellate court relied on Mich. Comp. Laws § 764.15, which provides: "A peace officer, without a warrant, may arrest a person . . .[if a] felony has been committed and the peace officer has reasonable cause to believe the person committed it."  *Id.*  That is entirely consistent with clearly

established federal law.  *See, e.g., Virginia v. Moore*, 553 U.S. 164, 173 (2008) ("[A] warrantless arrest satisfies the Constitution so long as the officer has 'probable cause to believe that the suspect has committed or is committing an offense.'").

The court of appeals then concluded the officer had reasonable cause for a warrantless arrest here based on the following facts:

> It is undisputed that an armed robbery occurred at the McDonald's.  The arresting deputies had reasonable cause to believe defendant had committed that felony. Defendant was found driving a vehicle matching the description given by witnesses and surveillance footage images of the vehicle that fled the scene after the robbery. An earlier search of the vehicle yielded white gloves like those worn in the robbery.

(Mich. Ct. App. Op., ECF No. 14-10, PageID.705-706.)  The court of appeals findings of fact are well-supported in the trial court record.  The findings are also presumed to be correct.  Petitioner offers no evidence, much less clear and convincing evidence, to overcome that presumption.

A motion to suppress based on the warrantless arrest would have been meritless. Counsel's failure to raise a meritless issue does not constitute ineffective assistance.  *See Sutton v. Bell*, 645 F.3d 752, 755 (6th Cir. 2011) ("Given the prejudice requirement, 'counsel cannot be ineffective for a failure to raise an issue that lacks merit.' "). "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).  Accordingly, Petitioner is not entitled to habeas relief on his claim that counsel was constitutionally ineffective for failing to move to suppress evidence based on the warrantless arrest.

Petitioner's claim premised on the warrantless placement of the GPS tracker fares no better.  In *United States v. Jones*, 565 U.S. 400 (2012), the Supreme Court concluded that a warrantless use of a GPS tracker on a suspect's vehicle was a search and, therefore, required a warrant.  *Jones* was decided after the use of a GPS to track Petitioner's vehicle, but before Petitioner's trial.  Before *Jones,* there was no clearly established federal law directly on point.

18

The Michigan Court of Appeals was well-aware of *Jones* when it rejected Petitioner's claim.  The court of appeals stated, however, that "[j]ust because a search is unconstitutional does not mean that the evidence is automatically suppressed."  (Mich. Ct. App. Op., ECF No. 14-10, PageID.706.)  The search might still be validated by "the officer's good-faith reliance on existing precedent . . . ."  (*Id.*)  The state appellate court then reviewed the relevant Supreme Court and federal circuit court decisions and concluded based upon those cases that "law enforcement officers would reasonably [conclude] . . . that they were free to place a tracking device on a vehicle parked in a public location, like an apartment complex parking lot, to discern when that vehicle would be moved."  (*Id.*, PageID.709.)

Three months after the Michigan Court of Appeals considered the issue in Petitioner's case, the Sixth Circuit, considering the same arguments Petitioner raises here, reached the same conclusion:

> At the time the police placed the tracking device on Fisher's vehicle, the training and guidance provided to these officers by various police agencies and prosecutors all indicated that such conduct was consistent with the Constitution; no circuit authority had indicated that the use of a GPS tracker was unconstitutional, and three circuits had held that such conduct was lawful; the relevant Supreme Court case law had indicated such a practice was lawful; and our precedent also provided binding authority permitting such conduct.  These are not the type of circumstances that warrant the application of the "bitter pill" that is the exclusionary rule.  As it is apparent that the police acted in reasonable, good-faith reliance and that their conduct was lawful, the exclusionary rule does not apply.

*United States v. Fisher*, 745 F.3d 200, 206 (6th Cir. 2014) *cert. denied* 135 S. Ct. 676 (2014).

As was the case with the warrantless arrest, any motion to suppress based on the warrantless placement of the GPS tracker would have been futile.  "[F]ailing to make a futile motion is neither unreasonable nor prejudicial."  *Jacobs v. Sherman*, 301 F. App'x 463, 470 (6th Cir. 2008) (citing *Strickland*, 466 U.S. at 687).  Accordingly, Petitioner is not entitled to habeas

relief based on counsel's failure to move to suppress evidence obtained by virtue of the warrantless GPS tracking.

On the last day that the jury heard testimony, Petitioner's counsel informed the court that the alibi witness "was no longer willing to be an alibi." (Trial Tr. IV, ECF No. 14-6, PageID. 584.)  Counsel explained to the court that he had discussed the situation with Petitioner and that counsel would no longer be calling the alibi witness. (*Id*.)  Petitioner acknowledged that he understood the situation. (*Id*.)  Nonetheless, Petitioner now contends that his counsel was ineffective for not calling the alibi witness or obtaining testimony from other witnesses who Petitioner now claims could provide an alibi.

When Petitioner complained about the issue at sentencing, counsel provided more detail:

> Your Honor, . . . what Mr. Woods said originally is absolutely correct.  I interviewed Ms. Pratt.  She said she verified Mr. Woods' story.  As mandated by law, I informed the Kent County Prosecutor's Office of her name, address, and phone number.  They interviewed her.  I had talked to her.  After that, she still was willing to testify.  We were getting her ready to testify.  She's supposed to come and see me.

> My secretary, who would be happy to talk to the Court, received notices from her family that she was not willing to testify.  I contacted Ms. Pratt.  She then told me that she could not say for sure that was the correct night.  I went over that with great length on this on the telephone, and she adamantly was not going to verify the alibi that she had previously told me.  And I elected as attorney, that would be much more damaging to Mr. Woods' case to call her where she would be probably more of a prosecutorial witness than a defense witness.  We put this on the record.  Mr. Woods was advised of that at that time, and he also, I believe on the record, consented to that.

(Sentencing Tr I., ECF No. 14-9, PageID.695-696.)  The trial court agreed with counsel's statement of the events. (*Id*., PageID.699.)

The Michigan Court of Appeals relied on the facts as stated by counsel when it concluded counsel had made a strategic decision to forego the presentation of Petitioner's alibi

20

witness.  (Mich. Ct. App. Op., ECF No. 14-10, PageID.715.)  The court of appeals determined that counsel possessed wide discretion in matters of trial strategy such as deciding whether to call a witness.  (*Id*., PageID.714.)  The failure to call a witness, the court found, would only constitute ineffective assistance if that failure deprived Petitioner of a substantial defense.  (*Id*., PageID.715.)  The appellate court concluded that, under the circumstances presented, counsel's failure to call Petitioner's alibi witness did not deprive Petitioner of a substantial defense.  (*Id*.)

Petitioner has failed to show that the court of appeals' analysis is contrary to, or an unreasonable application of, clearly established federal law.  Petitioner's claim fails under the first *Strickland* prong.  Counsel's decision to not further pursue the testimony of Petitioner's alibi witness, a decision based on credibility concerns and concerns that her testimony might bolster the prosecution's case against Petitioner, was reasonable.  *See Thurmond v. Carlton*, 489 F. App'x 834, 839-40 (6th Cir. 2012) (where defense counsel believed inconsistency in testimonies of prospective alibi witnesses rendered the testimony incredible, counsel's decision not to call either witness and not to further investigate alibi defense was reasonable); *Stadler v. Berghuis*, 483 F. App'x 173, 176-77 (6th Cir. 2012) (where defense counsel believed alibi testimony from family members was inherently incredible, counsel's decision to not call family members or mount all-out investigation of alibi defense was reasonable).  Because the ineffective assistance claim fails at the first step, there is no need to evaluate prejudice.  *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004).

Petitioner suggests that counsel's ineffectiveness regarding his alibi extends beyond counsel's failure to call the one alibi witness.  Petitioner claims there were two other witnesses who would have supported his alibi.  Petitioner's say-so is not enough.  Petitioner offers nothing to support his speculation that the testimony of other alibi witnesses would have been

favorable to him.  "A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."  *United States v. Ashimi*, 932 F.2d 643, 650 (6th Cir. 1991) (footnote omitted); s*ee also Pillette v. Berghuis*, 408 F. App'x 873, 887 (6th Cir. 2010) ("The salient point is that nobody knows what she would have said. Speculation cannot suffice to establish the requisite prejudice.").

The deputies seized white cloth gloves from the black Camaro.  They were submitted to the Michigan State Police lab for DNA testing.  A glove found on the front seat matched Petitioner's DNA, as well as the DNA of two unknown donors.  The gloves in the back seat included the DNA of two unknown donors as well, but not Petitioner.  The testimony regarding the DNA, however, did not come in through the lab analyst.  It came in through the testimony of the person who sent the gloves, and the buccal swabs from Petitioner and his co-defendant, to the lab.  Petitioner contends that he was denied his constitutional right to confront the lab analyst.  He is correct.

The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him."  U.S. Const., Am. VI; *Pointer v. Texas*, 380 U.S. 400, 403-05 (1965) (applying the guarantee to the states through the Fourteenth Amendment). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990).  The Confrontation Clause therefore prohibits the admission of an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify and the defendant had a prior opportunity for cross examination.  *Crawford v. Washington*, 541 U.S. 36, 59 (2004).

In *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310-11 (2009), the Supreme Court held for the first time that the affidavits of forensic analysts are testimonial statements that are covered by the Confrontation Clause and subject to analysis under *Crawford*. *Id.*; *see also Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2713-14 (2011). *Melendez-Diaz* involved lab reports regarding analysis of suspected cocaine. The Court characterized the lab reports—denominated as certificates—to be the equivalent of affidavits. Indeed, under Massachusetts law, the very purpose of the certificates was "to provide 'prima facie evidence of the composition, quality, and the net weight' of the analyzed substance . . . ." *Melendez-Diaz*, 557 U.S. at 311. In a criminal trial where the composition, quality, and net weight of the substance were key elements, the court concluded that the certificates were "functionally identical to live, in-court testimony . . . ." *Id.* at 310-11.

In *Bullcoming*, the Court considered the Confrontation Clause implications of admitting blood test results in a "driving while intoxicated" prosecution though the testimony of a person who worked at the lab and who was familiar with the lab's testing procedures, but had not conducted this specific blood test or signed the report. *Bullcoming*, 564 U.S. at 651. Even though the blood test results were not a sworn certification, the Court determined the results were testimonial and that Bullcoming's confrontation rights were violated. It is notable, however, that as in *Melendez-Diaz*, the reports at issue in *Bullcoming* bore directly on a matter at issue in the criminal trial: was the defendant under the influence of alcohol.

Then, in *Williams v. Illinois*, 567 U.S. 50 (2012), the Supreme Court considered whether an expert's testimony relying on a lab report regarding DNA test results violated the Defendant's confrontation rights. Five justices concluded that it did not. Four justices—Justices Alito, Kennedy, and Breyer, and Chief Justice Roberts—concluded that when an expert recounted

the results of the test, the expert was not presenting the results for the truth of the matter asserted, but only as support for the expert's opinion.  That conclusion, however, was premised on the fact that the report itself had not been introduced into evidence.  That is not the case here.

Those same four justices offered an alternative reason for rejecting the Confrontation Clause challenge: the report was "plainly . . . not prepared for the primary purpose of accusing a targeted individual" and, therefore, was not testimonial.  *Id*. at 84.  Justice Thomas disagreed with the plurality opinion with respect to the "truth of the matter asserted" reasoning. Nonetheless, he concurred in the judgment because he agreed with the plurality that the report was not testimonial.  He wrote separately because his reasoning differed from that of the plurality. Justice Thomas explained that the report was not testimonial because it did not bear the indicia of formalized testimonial materials:

> The Cellmark report lacks the solemnity of an affidavit or deposition, for it is neither a sworn nor a certified declaration of fact.  Nowhere does the report attest that its statements accurately reflect the DNA testing processes used or the results obtained.  *See* Report of Laboratory Examination, Lodging of Petitioner.  The report is signed by two "reviewers," but they neither purport to have performed the DNA testing nor certify the accuracy of those who did.  *See ibid*.  And, although the report was produced at the request of law enforcement, it was not the product of any sort of formalized dialogue resembling custodial interrogation.

*Id*. at 111.

The four dissenting justices—Kagan, Scalia, Ginsburg, and Sotomayor—concluded that a straightforward reading of the opinions in *Crawford*, *Melendez-Diaz*, and *Bullcoming* compelled the conclusion that the report here was offered for the truth of the matter asserted and was testimonial; therefore, Williams' confrontation rights were violated.

Although it is difficult to say that *Williams v. Illinois* clearly establishes anything, it would appear that the report in issue was testimonial and that the witness was not simply relying

on the report to support his expert opinion.  Indeed, the expert did not rely on the report at all.  He simply reported the results.

Accepting that the witness's report of the DNA test results was admitted in violation of the Confrontation Clause, Petitioner would still not be entitled to habeas relief.   The Sixth Circuit has held that admission of evidence in violation of the Confrontation Clause is not a structural error.  *United States v. Graham*, 278 F. App'x 538, 545 n.2 (6th Cir. 2008).  Harmless error review would apply.   *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).   Under the prevailing harmless error standard, the court must determine whether the Confrontation Clause violations had a "substantial and injurious effect or influence" in determining the jury's verdict. *See Brecht v. Abrahamson,* 507 U.S. 619, 637-38 (1993).   That determination "depends on numerous factors, including 'the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case."  *Holland v. Rivard*, 800 F.3d 224, 243 (6th Cir. 2015) (quoting *Van Arsdall*, 475 U.S. at 684).   Where the prosecution's case is strong and the violative evidence plays a relatively small role in the conviction, the error is harmless.  *Holland*, 800 F.3d at 243.

That is close to the standard that the court of appeals applied, and reflects the factors the court considered, in rejecting Petitioner's Confrontation Clause claim:

> Defendant is not entitled to relief, however, because he cannot establish that the error affected his substantial rights.  To warrant relief, a defendant must show that the court's plain error caused him prejudice by affecting the outcome of the lower court proceedings, "resulted in the conviction of an actually innocent defendant" or "seriously affected the fairness, integrity or public reputation of [the] judicial proceedings[.]"  *Carines*, 460 Mich at 763 (quotation marks and citation omitted).
>
> The impact of the DNA evidence found inside the white glove pales when compared to the strength of the other evidence.  Defendant was driving a vehicle

matching the description of the one used in the robbery.  Immediately after the robbery, defendant and Welch took photographs and a video of themselves with large amounts of currency.  When defendant was arrested, he had large rolls of small denomination bills in his pocket and deputies found 18 booklets of paper McDonald's gift certificates in defendant's apartment.  Defendant's cell phone records placed him in the area of the robbery.  Ultimately, the presence of defendant's DNA, along with the DNA of two other individuals, inside a glove found inside defendant's car seems trivial.

(Mich. Ct. App. Op., ECF No. 14-10, PageID.710.)   The standard applied by the Michigan appellate court was more akin to the harmlessness standard of *Chapman v. California*, 386 U.S. 18 (1967), than the *Brecht* standard.  But the state court's application of the *Chapman* standard is appropriate on direct review.[5]

"When a *Chapman* decision is reviewed under AEDPA, 'a federal court may not award habeas relief under § 2254 unless the *harmlessness determination itself* was unreasonable.'" *Davis v. Ayala*, 135 S. Ct. 2187, 2199 (2015) (quoting *Fry*, 551 U.S. at 119).   Therefore, to overcome the state court's harmlessness determination, Petitioner "must show that the state court's decision to reject his claim 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement.'"  *Davis*, 135 S. Ct. at 2199 (quoting *Harrington*, 562 U.S. at 103).

Petitioner does not come close to satisfying that standard.  The state appellate court's conclusion that the DNA evidence was trivial is eminently reasonable.  Undoubtedly, it was for that reason that Petitioner's counsel stipulated to its admission through the Sheriff's

---

[5] On habeas review, this Court must assess harmlessness under the standard set forth in *Brecht*, 507 U.S. at 619.  *See Fry v. Pliler*, 551 U.S. 112, 120-21 (2007).  The *Brecht* standard requires the Court to consider whether the constitutional error in the state criminal trial had a "substantial and injurious effect" on the result.  *Brecht*, 507 U.S. at 638.  The standard applied by the Michigan Court of Appeals was different, but still consistent with clearly established federal law.  The standard applied by the state appellate court is like the standard applied in *Chapman v. California*, 386 U.S. 18 (1967); it is the standard appropriate for harmlessness analysis on direct review.  *Fry*, 551 U.S. at 116.

Department's crime scene officer.[6]  Petitioner has failed to show that the state appellate court's determinations regarding his Confrontation Clause claim are contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, he is not entitled to habeas relief on his Confrontation Clause claim.

Moreover, the harmlessness determination precludes any claim that Petitioner's counsel was ineffective for stipulating to the admission of the DNA test results through the local crime scene unit witness.  The state appellate court's determination that the Confrontation Clause error was harmless under the *Chapman* standard means the error is also necessarily harmless under the lower threshold of *Brecht*.  The determination that any error was harmless under *Brecht* necessarily means that it is not prejudicial under *Strickland*.  *See Kyles v. Whitley*, 514 U.S. 419, 436 (1995) (explaining that the *United States v. Agurs*, 427 U.S. 97 (1976) materiality standard, later adopted as the prejudice standard for ineffective assistance of counsel claims, requires the habeas petitioner to make a greater showing of harm than is necessary to overcome the harmless error test of *Brecht*); *see also Wright v. Burt*, 665 F. App'x 403, 410 (6th Cir. 2016) ("[O]ur previous analysis of *Strickland* prejudice applies to the assessment of whether the Confrontation Clause violation was harmless error under *Brecht*."); *Bell v. Hurley*, 97 F. App'x 11, 17 (6th Cir. 2004) ("Because we find the error to be harmless [under *Brecht*] Bell cannot meet the prejudice requirement of *Strickland* . . . ."); *Kelly v. McKee*, No. 16-1572, 2017 WL 2831019 at *8 (6th Cir. Jan. 24, 2017) ("Because Kelly suffered harmless error [under *Brecht*] at best, he cannot establish that he suffered prejudice [under *Strickland*].").  Therefore, any claim that counsel rendered

---

[6] In response to Petitioner's state court appellate brief, the prosecutor provided a sworn affidavit stating that the analyst who prepared the DNA lab report was available to testify and had been subpoenaed.  The only reason the analyst was not called as a witness was because the prosecutor and Petitioner's counsel had agreed to admit the testimony through the local crime scene unit witness.  (Aff. of Monica Janiskee, ECF No. 14-10, PageID.851-852.)

ineffective assistance when he stipulated to the offending admission of the DNA test results is also without merit.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

28

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I also recommend that Petitioner's motions (ECF Nos. 15, 18, and 19) be denied. I further recommend that a certificate of appealability be denied.

Dated:    January 18, 2019                    /s/ Timothy P. Greeley
                                              Timothy P. Greeley
                                              United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).